[Cite as *Reed v. Reed*, 2025-Ohio-4857.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Valentina Sue Reed,                          :

      Plaintiff-Appellant,                  :

                                   No. 25AP-179

v.                                           :       (C.P.C. No. 15DR-2943)

Jerry Clifford Reed,                         :       (REGULAR CALENDAR)

      Defendant-Appellee.                   :

---

D E C I S I O N

Rendered on October 23, 2025

---

**On brief:** *Valentina Sue Reed*, pro se. **Argued:** *Valentina Sue Reed.*

---

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

DORRIAN, J.

{¶ 1}   Plaintiff-appellant, Valentina Sue Reed, appeals pro se from a decision of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, denying her motion to modify an agreed divorce decree.  For the reasons that follow, we affirm.

## I.  Facts and Procedural History

{¶ 2}   Valentina and defendant-appellee, Jerry Clifford Reed, were married on May 17, 1985.  On August 6, 2015, Valentina filed a complaint for divorce.  Jerry filed an answer and counterclaim for divorce on October 8, 2015. Jerry had retired from employment with the State of Ohio in 2014.  As part of the divorce proceedings, Jerry filed an affidavit of property attesting that he had an Ohio Public Employees Retirement System ("OPERS") retirement account with a value of $4,000 per month, and an Ohio Deferred

Compensation ("ODC") plan with a value of $213,361.25 as of June 2015. Both Valentina and Jerry were represented by counsel during the divorce proceedings.

{¶ 3} On August 28, 2016, the trial court entered an agreed divorce decree awarding the parties a divorce and dividing their marital and separate property. With respect to Jerry's OPERS retirement account, the agreed divorce decree provided as follows:

> [Jerry] shall retain as his own, free and clear of any claim of
> [Valentina], all right, title, and interest he has or may have in
> his OPERS, which is currently in pay-out status. [Valentina]
> waives all interest she has or may have in [Jerry's] OPERS.

(Agreed Jgmt. Entry & Decree of Divorce at 4.) Similarly, under the agreed divorce decree, Valentina retained all right, title, and interest in her State Teachers Retirement System account, and Jerry waived all interest in that account. The agreed divorce decree further provided that Valentina would receive one-half of the marital portion of Jerry's ODC account and that a Qualified Domestic Relations Order ("QRDO") would be entered to effectuate the division. The court entered the QRDO on May 5, 2016.

{¶ 4} On November 15, 2024, Valentina filed a pro se motion to modify the agreed divorce decree. Valentina asserted that, unbeknownst to her at the time, Jerry had selected a single life annuity plan upon his retirement from state employment.[1] Selection of the single life annuity plan required spousal consent; Valentina claimed Jerry submitted a forged spousal consent form to OPERS purporting to establish that she consented to the single life annuity plan. Valentina asserted she learned of the purported forgery during discovery in the divorce proceedings. In support of her motion, Valentina provided the transcript from a deposition of the individual who was named as the notary on the spousal consent form, taken September 1, 2015. The notary testified he worked in the same building as Jerry and that he notarized Jerry's retirement paperwork. He also testified that the notary's signature on the spousal consent form appeared to match his signature. However, the notary also testified he did not recall ever having met Valentina and that he would not

---

[1] A single life annuity plan provides a single life annuity to the retiree, terminating on the retiree's death with no monthly payments to any surviving spouse. *See State ex rel. Shisler v. Ohio Pub. Emps. Retirement Sys.*, 2009-Ohio-2522, ¶ 3; *McClanahan v. Ohio Pub. Emps. Retirement Sys.*, 2006-Ohio-5867, ¶ 2 (10th Dist.).

have notarized any document bearing her signature without seeing her sign it and verifying her identity.

{¶ 5} Valentina asserted that she believed Jerry's single life annuity plan would be changed to a joint annuity plan with a survivor benefit as part of the divorce proceedings. After Jerry died on December 15, 2023, Valentina contacted OPERS regarding survivor benefits. Valentina asserted that she then learned from OPERS for the first time that no documents had been filed to change Jerry's annuity plan. Valentina's motion to modify sought a ruling stating that the spousal consent form was forged and providing that she was entitled to survivor benefits from Jerry's OPERS retirement account.

{¶ 6} The trial court construed Valentina's motion to modify as a motion for relief from judgment under Civ.R. 60(B). The court concluded Valentina was not entitled to relief from judgment on any permissible basis under Civ.R. 60(B) because she was aware of the single life annuity plan selection and the allegedly forged spousal consent form during the divorce proceedings and still entered into the agreed divorce decree under which she waived all interest she may have had in Jerry's OPERS account. The court further concluded that Valentina's motion was untimely to the extent it sought relief on grounds of mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, fraud, or misrepresentation or misconduct of an adverse party because the motion was filed more than eight years after the agreed divorce decree was entered.

## II. Assignments of Error

{¶ 7} Valentina appeals and assigns the following two assignments of error for our review:

> I. The Trial Court erred as an error of law in denying her Motion for Relief from Judgment Civil Rule 60B(fraud), because it was untimely, and after considering the evidence, will reconsider, and issue a Ruling to the Ohio Public Employees Retirement System her Spousal Consent Form was Forged.

> II. The Trial Court erred in **not** acknowledging the distinction between Retirement Benefits, and a Matured Survivor Annuity, when dividing a Public Pension in Valentina Reed's divorce, and not issuing a Ruling her OPERS Spousal Consent Form was forged.

(Emphasis in original.) (Sic passim.)

## III. Discussion

{¶ 8}  Valentina's two assignments of error are related, and we will address them together.

{¶ 9}  As explained above, the trial court construed Valentina's motion to modify as a motion for relief from judgment under Civ.R. 60(B).  We review a trial court's decision on a Civ.R. 60(B) motion for abuse of discretion.  *Lane v. U.S. Bank, N.A.*, 2024-Ohio-4884, ¶ 8 (10th Dist.).  An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable; however, a court lacks authority to commit an error of law when exercising its discretion.  *Campbell v. 1 Spring, L.L.C.*, 2024-Ohio-308, ¶ 10 (10th Dist.).  When an issue of law, such as application or interpretation of a statute, is implicated, we apply a de novo standard of review.  *Dach v. Homewood*, 2015-Ohio-4191, ¶ 11 (10th Dist.).

{¶ 10}  In a divorce proceeding, the domestic relations court shall "determine what constitutes marital property and what constitutes separate property" and, upon making that determination, "shall divide the marital and separate property equitably between the spouses."  R.C. 3105.171(B).  For purposes of that division, "[r]etirement benefits earned during the course of a marriage constitute marital property."  *Walsh v. Walsh*, 2019-Ohio-3723, ¶ 19.  "A division or disbursement of property or a distributive award made under [R.C. 3105.171] is not subject to future modification by the court except upon the express written consent or agreement to the modification by both spouses."  R.C. 3105.171(I).

{¶ 11}  The agreed divorce decree in this case included a finding by the trial court that the parties stated under oath they felt the settlement was fair and equitable and that they entered the settlement voluntarily.  With respect to Jerry's OPERS retirement account, the agreed divorce decree expressly provided that Valentina "waive[d] *all interest she has or may have* in [Jerry's] OPERS."  (Emphasis added.) (Agreed Jgmt. Entry & Decree of Divorce at 4.)  Through her motion to modify, Valentina sought to obtain a survivor benefit from Jerry's OPERS account.  Thus, in addition to seeking a ruling from the court that the spousal consent form was forged, Valentina effectively sought a modification of the agreed divorce decree granting her a survivorship interest in Jerry's OPERS account.

{¶ 12}  In *Walsh*, the Supreme Court of Ohio reviewed a trial court order granting a Civ.R. 60(B) motion and altering a prior divorce decree to modify the term of the marriage and the share of military retirement pay that the former wife was to receive.  *Walsh* at ¶ 12.

The court noted that, in addition to the requirements for Civ.R. 60(B) relief, the divorce and dissolution statutes impose restrictions on a trial court's authority to modify a final divorce decree. *Id.* at ¶ 19. The court held that "Civ.R. 60(B) cannot be used to alter the statutory requirements for the modification of a [divorce] decree." *Id.* at ¶ 23. Therefore, the court further held, "[b]ecause R.C. 3105.171(I) does not permit modification [of certain terms of a divorce decree] absent the consent of both parties, Civ.R. 60(B) cannot provide a workaround." *Id.* This court has likewise held that R.C. 3105.171(I) prevents a trial court from modifying a divorce decree without express written consent by both parties. *Dimitrievska v. Dimitrievski*, 2025-Ohio-1937, ¶ 37 (10th Dist.) (holding that a trial court lacks jurisdiction to modify a property division without express written consent from both spouses but has power to clarify and construe the original division so as to effectuate the judgment); *Dutton v. Dutton*, 2025-Ohio-1980, ¶ 24 (10th Dist.) (same).

{¶ 13} In this case, there was not express written consent from both spouses for a modification of the agreed divorce decree with respect to Jerry's OPERS retirement account.[2] Accordingly, under R.C. 3105.171(I), the domestic relations court lacked authority to modify the agreed divorce decree and did not err by denying Valentina's motion to modify.

{¶ 14} The Supreme Court's decision in *Walsh* also concluded that even if the requested modification had not been prohibited by R.C. 3105.171(I) for lack of express written consent by both spouses, the former wife was not entitled to relief under Civ.R. 60(B). *Walsh*, 2019-Ohio-3723, at ¶ 28. The court stated that "[o]ur caselaw makes clear that even when a [divorce] decree reserves jurisdiction for the court to modify the parties' agreement, a court may not grant relief under Civ.R. 60(B)(4) or (5); rather it is limited to granting relief under Civ.R. 60(B)(1), (2), and (3)—all of which require the motion to be filed within one year from the date of the judgment." *Id.* The court explained that "a contrary rule would 'relieve a litigant from the consequences of his voluntary, deliberate

---

[2] We acknowledge that Jerry was deceased at the time Valentina filed her motion to modify and, therefore, could not personally give express written consent for a modification of the agreed divorce decree. In this case, neither Valentina nor the trial court addressed whether Jerry's death affected the court's authority to modify the agreed divorce decree. We are unaware of any precedent directly addressing this question but note that other courts of appeals have applied R.C. 3105.171(I) and followed *Walsh* in cases where one former spouse was deceased at the time modification of a divorce decree was sought. *See Rodeno v. Mezenski*, 2022-Ohio-1176, ¶ 23-30 (8th Dist.).

choice' to enter into an agreement." *Id.*, quoting *Knapp v. Knapp*, 24 Ohio St.3d 141 (1986), paragraph two of the syllabus. In this case, Valentina filed her motion to modify the agreed divorce decree more than eight years after it was entered. Therefore, even if R.C. 3105.171(I) did not apply in this case, the trial court did not err by denying Valentina's motion to modify the agreed divorce decree. *Walsh* at ¶ 28. ("[E]ven if we were to conclude that R.C. 3105.171(I) did not apply, the trial court still lacked authority to modify the divorce decree.").

{¶ 15} Accordingly, we overrule Valentina's first and second assignments of error.

## IV. Conclusion

{¶ 16} For the foregoing reasons, we overrule Valentina's two assignments of error and affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgment affirmed.*

MENTEL and LELAND, JJ., concur.

———————————